

FILED
MAR 26 2009
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

**WILLIAM T. ROBINSON,**

    Plaintiff,

v.                                    Civil Action No. **3:07CV449**

**GENE JOHNSON,** *et al.,*

    Defendants.

## MEMORANDUM OPINION

Plaintiff, a diabetic Virginia inmate, filed this action under 42 U.S.C. § 1983. The matter is before the Court on Plaintiff's misjoinder of claims; the motion for summary judgment filed by the Correctional Defendants[1]; the motion to dismiss filed by Prison Health Services; and Plaintiff's motions to strike and to find individuals in contempt of Court. These matters are ripe for disposition.

## I. MISJOINDER

Federal Rule of Civil Procedure 18(a) provides that: "A party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Nevertheless, when a plaintiff seeks to bring multiple claims against multiple defendants he must also satisfy Federal Rule of Civil Procedure 20, which provides:

---

[1] Correctional Defendants refers to individuals employed directly by Virginia Department of Corrections ("VDOC") and includes the following individuals: Gene M. Johnson; Maryland L. Pope; Linda Shear; James A. Pohlman; William Jarratt; Julie Lafoon; Paul Dianis; Dana Y. Kinsley; Renee Woodson; John Ausbon; Marvin Dodson; A. David Robinson; Anthony M. Parker; Shirley Tapp; J. Jones; M. Burke; G. Sivels; and Dr. A. Harris.

> **(2) *Defendants*.** Persons . . . may be joined in one action as defendants if:
> **(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> **(B)** any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a).

In addressing joinder, the Court is mindful that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). This impulse, however, does not provide a plaintiff free license to join multiple defendants into a single lawsuit where the claims against the defendants are unrelated. *See, e.g., George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Thus, "[a] buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner." *George*, 507 F.3d at 607.

### A. Plaintiff's Claims

Plaintiff's complaint sprawls over 150 pages, names 39 individuals and entities as defendants, and contains scores of claims in various stages of legal development. Plaintiff separates the facts giving rise to his causes of action with the use of Roman numerals beginning with V and ending with XVI. Plaintiff's claims against the various defendants fail to satisfy either of the requirements for permissive joinder. *Ghashiyah v. Frank*, No. 2:05cv0076, 2008

WL 680203, at * 2 (E.D. Wis Mar. 10, 2008) (noting that "the fact that Claim A shares two out of twenty defendants in common with unrelated Claim B and its ten defendants, does not mean that Claim A and Claim B are appropriately united in a single action"). Plaintiff's claims arise from disparate transactions and are not joined by a common question of law or fact.[2] For example, the claims arising from Part V concern the failure to provide Plaintiff with a single meal on July 19, 2005. Plaintiff names Defendants Early, John Doe #1, John Doe #2, Powell, Johnson, and Garratt in conjunction with his claims arising from this incident. The claims arising from Part VI concern Plaintiff's placement in segregation on September 21, 2005. The only relation of Part V to Part VI is Plaintiff's nebulous allegation that the July 19, 2005 event sparked some sort of animus in Defendant Early that caused him to retaliate against Plaintiff and place Plaintiff in segregation. Plaintiff's remaining claims go even farther afield: Claim VII concerns the efforts of a cabal of inmates to frame Plaintiff; Claim VIII arises from an alleged sexual assault on Plaintiff's person on August 16, 2006, by Defendant Batts; Claim IX concerns the confiscation of a pair of Plaintiff's prescribed socks and shoes by two John Doe defendants on February 3, 2006; Claim X raises claims related to Plaintiff's discharge from his job on January 9, 2007, by Defendants Ausbon and Dianis, and so on. Although it is unfortunate that the matter was not corrected sooner, misjoinder may be corrected at anytime. *See C.L. Ritter Lumber Co. v. Consol. Coal Co.*, 283 F.3d 226, 229 (4th Cir. 2002). Neither Rule 20(a), nor the

---

[2] To the extent that Plaintiff suggests that some conspiracy joined all of the defendants and their various transactions, he has failed to adequately plead facts that support such an agreement. *See Ruttenberg v. Jones*, 283 F. App'x 121, 131-32 (4th Cir. 2008) (No. 07-1037) (*citing Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

interests of judicial economy permit Plaintiff to pursue his "mishmash of a complaint" in its current form. *George*, 507 F.3d at 607.

**B. The Remedy**

Federal Rule of Civil Procedure 21 provides, "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. Where, as here, statute of limitations concerns arise, courts should sever rather than simply dismiss the misjoined claims. *See Strandlund v. Hawley*, 532 F.3d 741, 745-46 (8th Cir. 2008) (*citing DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)). Further, the appropriate course is to sever from the present action all of Plaintiff's claims except for his claims against the first-named defendant, Gene Johnson. *See DirecTV*, 457 F.3d at 845; *DirecTV v. Beecher*, 296 F. Supp. 2d 937, 945 (S.D. Ind. 2003); *see also Coughlin*, 130 F.3d at 1350 (*citing Aaberg v. ACandS Inc.*, 152 F.R.D. 498, 501 (D. Md. 1994)).

Plaintiff's severed claims will proceed as separate actions. *See George*, 507 F.3d at 607. Within twenty (20) days of the date of entry hereof, Plaintiff must file new complaints for his severed claims. Any forthcoming new complaints must comport with Rules 8 and 20 of the Federal Rules of Civil Procedure. Plaintiff will be responsible for the full filing fee for each new complaint he submits. *See DirecTV*, 296 F. Supp. 2d at 945.

Any forthcoming new complaint must contain the following caption at the top of the first page: "NEW COMPLAINT FOR SEVERED CLAIMS IN 3:07CV449." The new complaint(s) must set forth legibly, in separately numbered paragraphs, a short statement of the facts giving

4

rise to each claim against each defendant. Plaintiff also must state what civil rights he believes each defendant violated and explicitly state how said defendant's actions violated each constitutional right. The new complaints must stand or fall of their own accord. The failure to submit a proper new complaint for any claim or defendant within twenty (20) days of the date of entry hereof will result in the dismissal of that claim or defendant. *See* Fed. R. Civ. P. 41(b).

## II. PLAINTIFF'S CLAIMS AGAINST JOHNSON

While the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Furthermore, the Court will not construct claims based on allegations that appear in Plaintiff's subsequent submissions to the Court. *See Williams v. Harvey*, No. 4:05CV161, 2006 WL 2456406, at *6 (E.D. Va. Aug. 21, 2006). In light of the foregoing principles and the requirements of Federal Rule of Civil Procedure 8(a)(2), Plaintiff has raised the following claims against Johnson in his complaint.

| | |
|---|---|
| Claim V | Defendant Johnson's subordinates denied Plaintiff a meal on July 19, 2005. Such conduct "deprived, and continues to deprive Plaintiff of his rights to reasonable safety, adequate medical care, due process, petition the Government for a redress of grievances, freedom of speech, be secure in his person and papers, and effects, and to be free from excessive use of force, cruel and unusual punishment, and conspiracies to interfere with his civil rights." (Compl. V ¶ 25.) |
| Claim XI | Plaintiff is prohibited from carrying food outside of the cafeteria or the housing unit at his place of incarceration.<br>A. Defendant Johnson "violated Plaintiff's rights established by the "Americans With Disabilities Act" by refusing to make reasonable |

>           accommodations for plaintiff's disability, diabetes, and his need for
>           adequate medical treatment. (Compl. XI ¶ 1.)
>     B.    Defendant Johnson denied Plaintiff adequate medical care by
>           failing to alter this policy.
>
> Claim XIV   Defendant Johnson subjected Plaintiff to excessive heat in violation of the
>             Eighth Amendment.

Defendant Johnson has not addressed Claim XI in his present motion for summary judgment.

### A. Standard for summary judgment

Summary judgment is to be rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (*quoting* former Fed. R. Civ. P. 56(c) and 56(e) (1986)). In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Nevertheless, "'Rule 56 does not impose upon the district court a duty to sift

through the record in search of evidence to support a party's opposition to summary judgment.'" *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (*quoting Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 & n.7 (5th Cir. 1992)).

Defendant Johnson has submitted affidavits, copies of Plaintiff's grievances, and copies of pertinent prison regulations. Plaintiff has responded by submitting his sworn statement and a host of other material. Of course, the facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. 56(e). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Further, summary judgment affidavits must "set out specific facts." Fed. R. Civ. P. 56(e)(2). Therefore, "summary judgment affidavits cannot be conclusory . . . or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (*citing Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)).

The Court notes that in response to the motion for summary judgment, Plaintiff moved the Court to hold various individuals in contempt and to strike affidavits submitted by the Correctional Defendants. Such requests were not set forth in freestanding motions and accompanied by appropriate briefs. *See* E.D. Va. Loc. Civ. R. 7(F). Rather, they were simply intermingled with Plaintiff's brief in opposition to the Correctional Defendants' motion for summary judgment. Accordingly, Plaintiff's motions to strike and find individuals in contempt of court (Docket No. 52 & 53) will be DENIED.

### B. Claim V

In July of 2005, Plaintiff was housed in the Brunswick Correctional Center ("BCC). Around 3:15 p.m. Plaintiff received an insulin shot in the medical department. Plaintiff then went straight to the dining hall with the other diabetic inmates. The other diabetic inmates were permitted to enter the dining hall, but Defendant John Doe #2 told Plaintiff that he was not allowed to eat per the orders of Defendant Early.[3] Defendant John Doe #2 instructed Plaintiff to return to his housing unit.

Plaintiff saw Defendant Jarratt. Plaintiff asked Jarratt whether he could speak with Defendant Early or Assistant Warden Runion about Defendant Early's orders. Defendant Jarratt indicated that he did not know their whereabouts. Upon arriving in his housing unit, Plaintiff unsuccessfully attempted to contact help by phone. Plaintiff's blood sugar dropped and Plaintiff passed out. Plaintiff was revived by a nurse. Plaintiff alleges that he almost died and sustained irreparable injury because of this incident.

In order to survive summary judgment, Plaintiff must submit evidence from which a reasonable finder of fact could conclude that he was subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 320 (1986). A two-part test is used to determine whether the deprivation complained of presents a constitutional violation. The plaintiff must show, "'(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (*quoting Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). "[T]he first showing requires the court to determine whether the deprivation of the basic human

---

[3] In his affidavit, Plaintiff now identifies Joe Doe #2 as Correctional Officer James Hite.

need was *objectively* 'sufficiently serious,' and the second requires it to determine whether *subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" *Strickler*, 989 F.2d at 1379 (second alteration in original) (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

With respect to the subjective prong, the Supreme Court emphasized that it is conscious disregard for intolerable risks that is the touchstone of the deliberate indifference standard:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Here, Plaintiff has failed to adduce any evidence from which a jury could infer that Defendant Johnson was involved in denying Plaintiff a meal on July 19, 2005, much less that he acted with deliberate indifference to Plaintiff's diabetes. Accordingly, Defendant Johnson's motion for summary judgment with respect to Plaintiff's Eighth Amendment claim set forth in Claim V will be GRANTED.

Defendant Johnson has not addressed Plaintiff's allegations that "[t]he conduct of . . . Johnson, has deprived, and continues to deprive, Plaintiff of his rights to reasonable safety, adequate medical care, due process, petition the government for a redress of grievances, freedom of speech, be secure in his person papers, and effects, . . . and conspiracies to interfere with his civil rights." (Compl V ¶ 25.) Plaintiff, however, has not specified any conduct on the part of Johnson in Part V of the complaint. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (requiring a plaintiff to allege facts indicating personal participation by the named defendant). Further, the foregoing allegations fail to "'give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)).[4] Accordingly, Plaintiff's remaining allegations in Claim V will be dismissed for failure to state a claim.

### C. Claim XIV

Defendant Johnson contends Plaintiff's claim about excessive heat should be dismissed because Plaintiff failed to exhaust his administrative remedies.

#### 1. Summary of pertinent facts

The Virginia Department of Corrections ("VDOC") maintains a grievance procedure for resolving inmate complaints. The pertinent VDOC regulations require that, before submitting a formal grievance, the inmate must make a good faith effort to resolve the grievance informally through the procedures available at the institution. Grievance Procedure Regulations § 866-7.13. Generally, this requires an inmate to file an informal complaint form. If that resolution effort fails, the inmate must initiate a formal grievance by filling out a standard form. *Id.* § 866-7.14.1. "The original regular grievance (no photocopies or carbon copies) should be submitted by the inmate through the institutional mail system to the Warden/Superintendent's Office for processing by the Institutional Ombudsman/Grievance Coordinator." *Id.* Further, the inmate must attach to the formal grievance form pertinent documentation of his attempt to informally resolve the issue or write the results of his efforts at informal resolution on the grievance form. *Id.* A formal grievance must be filed within 30 days from the date of the incident or occurrence,

---

[4] This Court must dismiss any action filed by a prisoner if the Court determines the action "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A.

10

or the discovery of the incident or occurrence, except in instances beyond the inmate's control. *Id.* § 866-7.14.

Prior to review of the substance of a formal grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. *Id.* § 866-7.14(2). For example, prison officials will not process grievances that are untimely or that attempt to grieve more than one issue or where it appears that the inmate has not utilized the informal processes available to resolve his complaint. *See id.* Instead, prison officials note the reason the grievance was not processed on the grievance and return the grievance to the inmate. Often, it is possible for the inmate to thereafter have his grievance processed by meeting the specified criteria for acceptance, such as including missing information or deleting references to multiple issues and resubmitting the grievance. Further, "[i]f an inmate wishes a review of the intake decision on any grievance, he/she may send the grievance form within five (5) calendar days of receipt to the appropriate Regional Ombudsman for a determination. There is no further review of intake decisions." *Id.* § 7.14(2).

There are up to three levels of review for a formal grievance. *Id.* § 866-7.15. The warden or superintendent of the inmate's facility is responsible for Level I review. *Id.* § 866-7.15. If the inmate is dissatisfied with the determination at Level I, he may appeal the decision to Level II, obtaining a review by the VDOC Regional Director, the VDOC Health Services Director, or the VDOC Chief of Operations for Offender Management Services. *Id.* § 866- 7.15.2. The Level II response informs the inmate whether the inmate may pursue an appeal to Level III.

Robinson has filed scores of grievances since his incarceration. With respect to the issue of excessive heat, prior to the submission of his complaint to this Court, Plaintiff filed a regular

grievance on July 15, 2007. Plaintiff's grievance was returned to Plaintiff because it contained insufficient information. Specifically, Plaintiff failed to identify the date of occurrence about which he complained. Thereafter, on July 23, 2007, Plaintiff resubmitted the grievance stating that the dates at issue were "from May 2006, off and on, until 7-10-07." (Pl.'s Resp. to Mot. for Summ. J. Ex. I, Enc. A8.) On or about July 23, 2007, the Grievance Coordinator rejected Plaintiff's grievance on the grounds that it was untimely to the extent Plaintiff sought to complain about events occurring in May of 2006. On or about July 25, 2007, Plaintiff appealed that intake decision to the Regional Ombudsman. On August 1, 2007, the Regional Ombudsman upheld the intake decision.

### 2. Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are *available* are exhausted." 42 U.S.C. 1997e(a) (emphasis added). Generally, in order to satisfy the exhaustion requirement, the inmate must file a grievance raising the claim and pursue the grievance through all available levels of appeal. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Additionally, the Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93. The Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "'so that the agency addresses the issues on the merits.'" *Id.* (internal parentheses omitted) (*quoting Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, the applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Plaintiff contends that he is only required to exhaust *available* administrative remedies and "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (*citing Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). Specifically, Plaintiff states that:

> While proceeding to exhaust my administrative remedies on these issues I was threaten to be transferred to prisons that I felt put my health and release at greater risk, if I pursued the issue any further. I had filed several complaints and requests on the extreme heat and the staff elude to different days, state the heat that I was subjected to did not effect me personally and so was an inquiry on behalf of others, not answer them back, and to my being shipped to places that I had earlier told them I did not want to go. I had tried to exhaust my administrative remedies on these issues but Defendants obstructed my access to the administrative process, therefore obstructing my ability to exhaust my administrative remedies (see **Exhibit I - Enclosure A8 . . .**).

(Pl.'s Resp. to Mot. for Summ. J. Pl.'s Aff. ¶ 136.)[5] Many of the grievances and informal complaints to which the Plaintiff directs the Court were pursued after the Plaintiff filed this action and are thus irrelevant to the exhaustion inquiry. *See Johnson v. Jones*, 340 F.3d 624, 628 (8th Cir. 2003) (citing cases from six other circuits). "Under the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court. Thus, in considering motions to dismiss for failure to exhaust under section 1997e(a), the district court must look to the time of filing . . . to determine if exhaustion has occurred." *Id.* at 627.

---

[5] The record reflects that Plaintiff was able to file a host of grievances on a myriad of issues. Thus, Plaintiff's "[a]iry generalities [and] conclusory assertions" that some unidentified individual made some comment about transferring Plaintiff if he was unhappy with heat in his dormitory "[do] not suffice to stave off summary judgment." *United States v. Roane*, 378 F.3d 382, 400-01 (4th Cir. 2004) (internal quotations omitted) (first and third alterations in the original).

13

"[E]xhaustion *pendente lite* undermines the objectives of section 1997e(a) . . . the language of section 1997e(a) clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement, thus requiring an outright dismissal of such actions rather than issuing continuances so that exhaustion may occur." *Id.* at 628 (citing cases).

Therefore, the Court's exhaustion analysis must focus on administrative remedies available prior to Plaintiff's submission of the action on July 25, 2007, and whether he exhausted them.[6] As of that date, Plaintiff was still in the process of challenging the intake decision on his regular grievance. Thus, Plaintiff did not exhaust his available administrative remedies prior to filing the present action. *See id.*; *see also Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001) (affirming dismissal of inmates' complaint because they had begun, but not yet exhausted, the prison grievance procedure); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (dismissing inmate's complaint because he filed his federal complaint before allowing the administrative process to be completed). Further, prison officials' initial refusal to process Plaintiff's grievance because it pertained to events that exceed the time limits set by prison rules did not render the grievance procedures unavailable. *See Woodford*, 548 U.S. at 87, 90. Accordingly, Defendant Johnson's motion for summary judgment with respect to Claim XIV will be GRANTED.

---

[6] Plaintiff executed his complaint on July 6, 2007. The envelope for Plaintiff's complaint was postmarked July 25, 2007 and the complaint was received by the Court on July 27, 2007. Therefore, for purposes of the disposition of this claim the Court will assume that the action was filed on July 25, 2007. *See Houston v. Lack*, 487 U.S. 266, 276 (1988)

## III. CONCLUSION

The present action will proceed only with Claim XI against Defendant Johnson and the remaining claims will be severed and proceed as separate actions. Should Plaintiff wish to pursue any of his severed claims, he must file new separate complaints for such claims within twenty (20) days of the date of entry hereof. *See* Fed. R. Civ. P. 41(b).

The motion for summary judgment filed by Defendant Johnson will be GRANTED. Claims V and XIV against Defendant Johnson will be dismissed. Should either Defendant Johnson or Plaintiff wish to file a dispositive motion with respect to XI, he must do so within thirty (30) days of the date of entry hereof.

The motion to dismiss filed by Defendant Health Services and the Correctional Defendants, other than Defendant Johnson, (Docket Nos. 24 & 26) will be DENIED WITHOUT PREJUDICE to renew should Plaintiff choose to file any new complaints pursuing his claims against them.

An appropriate Order shall issue.

Date: MAR 2 6 2009
Richmond, Virginia

/s/
Richard L. Williams
United States District Judge

/s/

Robert L. Williams
United States District Judge